**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**DENVER DIVISION**

IN RE SUBPOENA TO ARROW ELECTRONICS, INC.

CASE NO. _____

**NON-PARTY ARROW ELECTRONICS, INC.'S**
**MOTION TO QUASH DEPOSITION SUBPOENA AND**
**REQUEST FOR ATTORNEYS' FEES**

TABLE OF CONTENTS

Table of Authorities ..................................................................................................... ii

Introduction.................................................................................................................1

Background .................................................................................................................2

Legal Standard ...........................................................................................................4

Arguments ..................................................................................................................6

    A.  The Court should quash the Subpoena for subjecting Arrow
        to undue burden........................................................................................ 6

        1.  The Subpoena requests information from a non-party
            that Purdue should first seek from parties to the WDTX
            Litigation. ................................................................................... 6

        2.  The Subpoena requires Arrow's corporate
            representative to spend significant time and effort
            memorizing details contained in documents and
            communications. ......................................................................... 9

        3.  The Subpoena is a transparent attempt to pressure
            Arrow to produce documents (that should first be
            sought from ST Inc.) in exchange for canceling a
            burdensome deposition. ............................................................ 12

    B.  The Court should award Arrow its attorneys' fees
        associated with opposing the Subpoena and filing this
        Motion. .................................................................................................... 13

Conclusion ...............................................................................................................13

## TABLE OF AUTHORITIES

### Cases

*Bosier v. Am. Fam. Mut. Ins. Co., S.I.*,
  No. 17-CV-02664-KLM, 2019 WL 981349 (D. Colo. Feb. 28, 2019)......................................5

*Buckhorn, Inc. v. Orbis, Inc.*,
  No. 10–MC–71, 2010 WL 4941726 (E.D. Wis. Nov. 30, 2010).............................................8

*Carbajal v. Serra*,
  No. 10-CV-02862-REB-KLM, 2012 WL 2215677 (D. Colo. June 15, 2012) .........................5

*Davis v. Ramen*,
  No. 1:06–cv–01216–AWI–SKO PC, 2010 WL 1948560 (E.D. Cal. May 11, 2010)..............11

*DISH Network, L.L.C. v. WNET*,
  No. 13-CV-00832-PAB-KLM, 2014 WL 1628132 (D. Colo. Apr. 24, 2014) .........................5

*Echostar Commc'ns Corp. v. News Corp.*,
  180 F.R.D. 391 (D. Colo. 1998) ................................................................................5, 6, 7, 9

*Genus Lifesciences Inc. v. Lannett Co., Inc.*,
  No. 18-cv-07603-WHO, 2019 WL 7313047 (N.D. Cal. Dec. 30, 2019)............................7, 11

*Haworth, Inc. v. Herman Miller, Inc.*,
  998 F.2d 975 (Fed. Cir. 1993) ................................................................................................7

*Insituform Techs. v. Cat Contracting*,
  914 F. Supp. 286 (N.D. Ill. 1996) ..........................................................................................9

*Kim v. NuVasive, Inc.*,
  No. 11cv1370-DMS (NLS), 2011 WL 3844106 (S.D. Cal. Aug. 29, 2011) ...........................8

*King v. Solvay S.A.*,
  No. CV 14MC00196LTBKLM, 2014 WL 4267457 (D. Colo. Aug. 28, 2014)................4, 5, 6

*Meacham v. Church*,
  No. 2:08–cv–535, 2010 WL 1576711 (D. Utah Apr. 19, 2010)...............................................5

*Moon v. SCP Pool Corp.*,
  232 F.R.D. 633 (C.D. Cal. 2005)..........................................................................................11

*Nidec Corp. v. Victor Co. of Japan*,
  249 F.R.D. 575 (N.D. Cal. 2007)............................................................................................8

*Rembrandt Patent Innovations v. Apple, Inc.*,
  No. 1:15–CV–438–RP, 2015 WL 4393581 (W.D. Tex. July 15, 2015).....................................8

*Soto v. Castlerock Framing & Transp., Inc.*,
    282 F.R.D. 492 (E.D. Cal. 2012) ................................................................ 7, 11

*Spacecon Spec. Contractors, LLC v. Bensinger*,
    No. 09–cv–2080–REB–KLM, 2010 WL 3927783 (D. Colo. Oct. 1, 2010) ............................ 6

*Versata Software v. Internet Brands, Inc.*,
    No. 11–mc–50844, 2011 WL 4905665 (E.D. Mich. Oct. 14, 2011) ........................................ 8

## Rules

Fed. R. Civ. P. 26(b) .................................................................................................... 8

Fed. R. Civ. P. 26(b)(1)................................................................................................ 5

Fed. R. Civ. P. 34 .................................................................................................. 14, 15

Fed. R. Civ. P. 45 .......................................................................................................... 4

Fed. R. Civ. P. 45(d)(1)......................................................................................... 5, 7, 15

Fed. R. Civ. P. 45(d)(3)(A)(iv) ..................................................................................... 5

## Treatises

9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1 .............. 5

## INTRODUCTION

The Trustees of Purdue University ("Purdue") seeks an extensive deposition of a non-party over information that is (1) all found in documents and (2) equally obtainable from a party in the underlying lawsuit. More specifically, Purdue served a deposition subpoena with six topics to a non-party seeking information regarding agreements, transactions, meetings, and communications between the ST Defendants[1] and ST's authorized distributors in connection with a patent-infringement lawsuit that Purdue filed against the ST Defendants in the Western District of Texas.[2] Party fact discovery opened in that patent case on May 2, 2022. But instead of seeking the requested discovery through *party* discovery, Purdue jumped to serving *non-party* deposition subpoenas demanding corporate depositions of at least three of ST's distributors, including Arrow Electronics. Purdue's subpoena for a deposition of Arrow on these topics is unduly burdensome. ***First***, Purdue can likely find all of the sought-after information in *documents* requested directly from ST Inc., a party to the underlying litigation, instead of a non-party corporate deposition. ***Second***, Purdue has not tried to first obtain this information from ST Inc. before burdening a non-party. ***Third***, even if non-party discovery was appropriate here, Purdue has not even requested the underlying documents from Arrow—only a burdensome corporate deposition that purports to require Arrow's witness to *memorize* agreement details and spreadsheets.

---

[1] STMicroelectronics, Inc. ("ST Inc."), STMicroelectronics N.V. ("STNV"), and STMicroelectronics International N.V. ("ST Int'l").

[2] *See The Trustees of Purdue University v. STMicroelectronics, Inc. et. al*, No. 6:21-cv-727-ADA (W.D. Tex.) (hereinafter, the "WDTX Litigation").

The Court should therefore quash Purdue's non-party subpoena for subjecting Arrow to undue burden. Further, because Purdue failed to take reasonable steps to avoid imposing undue burden or expense on a non-party, the Court should also order Purdue to pay the reasonable attorneys' fees incurred by Arrow in opposing the subpoena and filing this Motion.

## BACKGROUND

The patents asserted in the WDTX Litigation relate generally to metal oxide semiconductor field effect transistors (MOSFETS) with silicon carbide (SiC) substrates. *See* First Am. Compl., WDTX Litigation, ECF No. 27 at ¶¶ 74, 82, 84. Purdue is accusing certain of ST's SiC power MOSFET devices of infringing the asserted patents. *Id.* at ¶¶ 91, 104. Party fact discovery in the WDTX Litigation opened on May 2, 2022. *See* Purdue's Unopposed Notice to Extend Deadlines, WDTX Litigation, ECF No. 83. Purdue is therefore free to serve merits discovery requests on the defendant ST Inc.[3]

On May 9, 2022, just a few days after the opening of party fact discovery, Purdue served a subpoena on Arrow requesting that Arrow appear for a deposition eleven days later on May 20, 2022. *See* **Ex. A**: Morgan Decl. ¶ 3; **Ex. B**: Subpoena to Testify at Deposition in a Civil Action ("Arrow Subpoena"). Purdue also served substantively identical deposition subpoenas on non-parties Digi-Key Corporation (**Ex. C**) and Mouser Electronics, Inc. (**Ex. D**).

Arrow is an authorized distributor of various products from ST Inc. **Ex. A**: Morgan Decl. ¶ 4. Arrow has been a distributor of ST products for at least 23 years and has distributed at least

---

[3] Also, in light of STNV's motion to dismiss for lack of personal jurisdiction, the court stayed all discovery directed to STNV except for limited jurisdictional discovery, which is "limited in scope to the theories propounded in Purdue's opposition at ECF No. 47." Mem. Op. & Order re Mot. to Dismiss for Lack of Pers. Jurisdiction, WDTX Litigation, ECF No. 84 at 14.

several thousand ST products. **Ex. A**: Morgan Decl. ¶ 6. Digi-Key and Mouser likewise appear

to be among ST Inc.'s authorized distributors. *See, e.g.*, https://www.digikey.com/en/supplier-

centers/stmicroelectronics; https://www.mouser.com/manufacturer/stmicroelectronics.

      The deposition topics in all three non-party subpoenas seek certain information about the

distributor relationships between the non-parties and ST. For example, with respect to the Arrow

Subpoena at issue in this Motion, Purdue seeks information regarding the following:

- Arrow's agreements, such as distribution agreements, concerning ST and ST's products (Topics 1–2);

- ST's delivery of SiC power MOSFET devices to Arrow in the United States for sale to end-users in the United States (Topic 3);

- Meetings between Arrow and ST's representatives in the United States (Topic 4);

- ST's disclosure of marketing, sales, and technical materials concerning SiC power MOSFET products to Arrow (Topic 5); and

- ST's statements to Arrow concerning the WDTX Litigation (Topic 6).

*See* **Ex. A**: Morgan Decl. ¶ 5; **Ex. B**: Arrow Subpoena.

      As written, the Arrow Subpoena is unduly burdensome and plainly seeks information

about the Arrow–ST relationship that Purdue can obtain directly from ST Inc., a defendant in the

underlying WDTX Litigation. All of the information Purdue seeks can likely be obtained from

documents in ST Inc.'s possession without needlessly burdening Arrow and duplicating party

discovery. **Ex. A**: Morgan Decl. ¶ 10. At the very least, Arrow is not aware of any information

responsive to the deposition topics that could not be obtained from documents or information in

ST Inc.'s possession, custody, or control. **Ex. A**: Morgan Decl. ¶ 11. Purdue has provided no

suggestion that the information they seek is unobtainable from ST Inc., nor has Purdue

articulated any legitimate basis for pursuing non-party discovery right out of the gate without first attempting party discovery.

In addition, with respect to at least one other distributor (Mouser), Purdue has agreed to forego the document-focused deposition altogether in exchange for Mouser's production of the underlying documents. *See* **Ex. E**: Email agreement between Purdue and Mouser, at 1–2. As further explained below, this suggests two things: (1) what Purdue is really seeking with these "deposition" subpoenas are the documents themselves, not corporate testimony, and (2) the subpoenas are merely a tactic employed by Purdue to pressure non-parties into producing documents that are readily obtainable from a party defendant and that should be sought through party discovery.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs depositions of non-parties by subpoena. *King v. Solvay S.A.*, No. CV 14MC00196LTBKLM, 2014 WL 4267457, at *2 (D. Colo. Aug. 28, 2014). The scope of discovery allowed under Rule 45 is the same as the scope allowed under Rule 26(b). *See id*. Under Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and *proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues*, and whether the burden or expense of the proposed discovery outweighs its likely benefit*." Fed. R. Civ. P. 26(b)(1) (emphasis added). Importantly, a party issuing and serving a subpoena "***must*** take reasonable steps to ***avoid imposing undue burden or expense*** on a person subject to the subpoena." Fed. R. Civ. P.

45(d)(1) (emphasis added). Consequently, a court "***must*** quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv) (emphasis added).

Whether a subpoena subjects a witness to undue burden generally raises a question of the subpoena's reasonableness, which "depends on the balance of the interest served by demanding compliance with the subpoena against the interests served by quashing it." *Carbajal v. Serra*, No. 10-CV-02862-REB-KLM, 2012 WL 2215677, at *2 (D. Colo. June 15, 2012) (quotation marks and citation omitted); *see also Solvay*, 2014 WL 4267457, at *2 ("[T]he court weighs the burden to the subpoenaed party against the value of the information to the requesting party."). Generally, this requires consideration of (1) the relevance of the information requested, (2) the requesting party's need for the information, (3) the breadth of the request, (4) the time period covered by the request, (5) the particularity with which the party describes the requested information, and (6) the burden imposed. *DISH Network, L.L.C. v. WNET*, No. 13-CV-00832-PAB-KLM, 2014 WL 1628132, at *3 (D. Colo. Apr. 24, 2014). "The Court also considers whether the information 'is necessary and ***available from any other source***.'" *Carbajal*, 2012 WL 2215677, at *2 (emphasis added) (quoting *Meacham v. Church*, No. 2:08–cv–535, 2010 WL 1576711, at *2 (D. Utah Apr. 19, 2010)) (citing 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1).

In addition, "[d]iscovery from third-parties must, under most circumstances, be closely regulated." *Bosier v. Am. Fam. Mut. Ins. Co., S.I.*, No. 17-CV-02664-KLM, 2019 WL 981349, at *3 (D. Colo. Feb. 28, 2019) (citing *Echostar Commc'ns Corp. v. News Corp.*, 180 F.R.D. 391, 396 (D. Colo. 1998)). "The fact that discovery is sought from a non-party is one factor the Court may weigh in determining whether [the requesting party] is entitled to enforcement of the

subpoena." *Solvay*, 2014 WL 4267457, at *2 (alteration in original) (quoting *Spacecon Spec. Contractors, LLC v. Bensinger*, No. 09–cv–2080–REB–KLM, 2010 WL 3927783, at *3 (D. Colo. Oct. 1, 2010)). More specifically, "[c]ourts are required to balance the needs for discovery against the burdens imposed when parties are ordered to produce information or materials, and *the status of a person or entity as a non-party* is a factor which *weighs against disclosure*." *Echostar*, 180 F.R.D. at 394 (emphasis added).

Lastly, when a party fails to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," the compliance court "*must* enforce this duty and *impose an appropriate sanction*." Fed. R. Civ. P. 45(d)(1). Such sanctions may include awarding reasonable attorneys' fees. *Id.*

**ARGUMENTS**

**A.    The Court should quash the Subpoena for subjecting Arrow to undue burden.**

**1.    The Subpoena requests information from a non-party that Purdue should first seek from parties to the WDTX Litigation.**

On whole, the relevant factors support quashing the Arrow Subpoena, and Purdue has not, to date, identified any justification as to why the balancing test tips in their favor. To begin with, the burden to Arrow imposed by the subpoena outweighs Purdue's need to enforce it. Indeed, Purdue *does not need to depose Arrow* at all to obtain the information it seeks because the requested information is readily obtainable from a party defendant. Based on a preliminary investigation of the subpoena topics, it appears that there is no information regarding Topics 1–6 that is uniquely specific to Arrow. **Ex. A**: Morgan Decl. ¶ 11. Rather, all of the information that Purdue seeks (e.g., about documents and communications shared between Arrow and ST) can likely be obtained directly from ST Inc. **Ex. A**: Morgan Decl. ¶10. At the very least, Arrow is

unaware of any information responsive to these deposition topics that could ***not*** be obtained from documents or information in ST's possession, custody, or control. **Ex. A**: Morgan Decl. ¶ 11.

Pursuant to Fed. R. Civ. P. 26(b), a district court has the power to deny discovery if the party seeking discovery can obtain it from another source that is more convenient, less burdensome, or less expensive. Thus, a district court can properly require a party "to seek discovery from its party opponent before burdening a nonparty." *Haworth, Inc. v. Herman Miller, Inc*., 998 F.2d 975, 978 (Fed. Cir. 1993). "In general, there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests." *Genus Lifesciences Inc. v. Lannett Co., Inc.*, No. 18-cv-07603-WHO, 2019 WL 7313047, *4 (N.D. Cal. Dec. 30, 2019) (quoting *Soto v. Castlerock Framing & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) (collecting cases)).

This Court's holding in *Echostar Commc'ns Corp. v. News Corp.*, 180 F.R.D. 391 (D. Colo. 1998) is instructive on this point. In that case, the plaintiff, Echostar, served non-party subpoenas seeking several broad categories of information before "exhaust[ing] its efforts to obtain these materials, first, from [the defendant] News Corp." *Id.* at 393. The Court held that Echostar could not demonstrate a need, much less a substantial need, for the non-party discovery, because the sought-after materials were "as readily available from News Corp as they [were] from non-parties." *Id*. at 395. "Until Echostar has exhausted its efforts to seek production of these types of materials from News Corp, and until Echostar has, at least, completed some depositions, it cannot even begin to argue that it has a substantial need to obtain the materials from the non-parties." *Id.*

Similarly, in *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007), the court quashed a patent plaintiff's subpoena to a non-party because the requested discovery could more easily be obtained from the accused infringers. Like here, in *Nidec* "the vast majority of the discovery sought" from the non-party was "obtainable from a source more direct, convenient, and less burdensome—namely, from Defendants." *Id.* For example, the discovery at issue consisted of, in essence, documents provided by the defendants to the non-parties, and "[t]here is simply no reason to burden nonparties when the documents sought are in possession of the party defendant." *Id.*

Courts across the country have quashed similar subpoenas requesting discovery from non-parties that should first be sought from a litigation party. *See, e.g.*, *Rembrandt Patent Innovations v. Apple, Inc.*, No. 1:15–CV–438–RP, 2015 WL 4393581, at *1–2 (W.D. Tex. July 15, 2015) (quashing subpoena served on a non-party since the court concluded that the requested information could be sought from the accused infringer instead); *Versata Software v. Internet Brands, Inc.*, No. 11–mc–50844, 2011 WL 4905665, at *2 (E.D. Mich. Oct. 14, 2011) (quashing the plaintiff's subpoena for a corporate deposition of a non-party, because the non-party deposition was cumulative of depositions that the plaintiff could obtain from one of the parties to the suit); *Buckhorn, Inc. v. Orbis, Inc.*, No. 10–MC–71, 2010 WL 4941726, at *1 (E.D. Wis. Nov. 30, 2010) (granting motion to quash a non-party subpoena in a patent case because the plaintiff patentee failed to show why the sought-after discovery could not be obtained from the defendant accused infringer); *Kim v. NuVasive, Inc.*, No. 11cv1370-DMS (NLS), 2011 WL 3844106, at *4 (S.D. Cal. Aug. 29, 2011) ("Until such time as [the patent plaintiff] can satisfy the Court that the subpoenas served on [the non-party] target relevant information that it cannot

obtain from [the defendant accused infringer], the subpoenas should be quashed."); *Insituform Techs. v. Cat Contracting*, 914 F. Supp. 286, 287 (N.D. Ill. 1996) (holding a party should not be permitted to seek information from a non-party that can be obtained from the opposing party).

Because Purdue has not event attempted to first seek the requested information from ST Inc., this Court should follow *Echostar* and the holdings of courts above as quash the Arrow Subpoena.

> **2.      The Subpoena requires Arrow's corporate representative to spend significant time and effort memorizing details contained in documents and communications.**

As explained above, the deposition topics in the Arrow Subpoena seek a host information about the distributor relationship between Arrow and ST. Arrow anticipates that Purdue will argue these topics are simple, straightforward, and impose no burden on Arrow's corporate witness, but this is demonstrably false. To the contrary, the requested deposition imposes a severely burdensome memory test on Arrow's designated witness.

Most of Purdue's ***deposition*** topics seek detailed information regarding various ***documents***, such as written agreements and communications with ST. Thus, the subpoena not only requires Arrow to search for and review those documents but also have its corporate witness *memorize* detailed information contained in those documents. For example, Topic 1 alone asks Arrow's witness to testify about 12 different aspects of the Arrow's distributor agreements and amendments with ST, including: (1) Arrow's purchase and ordering of ST products; (2) ST's sale of products to Arrow; (3) ST's prices and discounts; (4) shipping of ST products; (5) promotion and marketing of ST's products; (6) returns and recalls of ST products; (7) record keeping for ST products; (8) ST's provision of sales literature, technical data, instruction

manuals, promotional materials, training and technical assistance; and (9) ST's warranty for its products. *See* **Ex. A**: Morgan Decl. ¶ 7; **Ex. B**: Arrow Subpoena. Moreover, Topic 1 is not limited by time or products, and Arrow has been distributor of ST products for at least 23 years, having distributed at least several thousand products during that period. **Ex. A**: Morgan Decl. ¶ 6. Preparing a witness to testify about these topics would require Arrow to invest a significant amount of time and effort, including requiring an Arrow employee to locate and study all of Arrow's distributor agreements, amendments, and transactional history with ST. **Ex. A**: Morgan Decl. ¶ 7. It would be incredibly difficult, if not impossible, for an Arrow employee to effectively memorize the terms of all of Arrow's agreements and amendments with ST to testify on these topics. **Ex. A**: Morgan Decl. ¶ 8.

Similarly, Topic 3 asks for seven years of sales volumes, shipping records, part numbers, country of origin, cost, sale price, and revenues for all SiC Power MOSFET products. **Ex. A**: Morgan Decl. ¶ 9; **Ex. B**: Arrow Subpoena. Collecting this information would require an Arrow employee to, at least, run several reports, analyze databases across multiple systems, review documents, and interview other employees from various departments to comprehend all information provided. **Ex. A**: Morgan Decl. ¶ 9. To testify about this topic, an Arrow employee would have to not only collect all of this data but also attempt to digest it, summarize it, and prepare to verbally explain it, which would take considerable time and effort. **Ex. A**: Morgan Decl. ¶ 9. This is significantly more burdensome than even a typical document subpoena.

Arrow estimates that would it take a senior Arrow employee who already has some familiarity with the Arrow–ST relationship at least two weeks working full time to review all of the information necessary to prepare to testify on Purdue's subpoena topics. **Ex. A**: Morgan

Decl. ¶ 13. Losing a senior-level employee for two weeks, not including another day or so for the deposition itself, would impose a significant burden on Arrow. As one example, during that time, the employee would be unable to perform their daily duties, requiring others to fill in. This would cause a significant disruption in managing Arrow's business for at least several weeks. **Ex. A**: Morgan Decl. ¶ 13.

Lastly, to be clear, the Arrow Subpoena seeks a ***deposition*** about the contents of documents, not production of the documents themselves. But even ***if*** Purdue had issued a subpoena duces tecum requesting the actual documents from Arrow instead of a burdensome deposition, the subpoena would still be improper without first seeking the documents directly from ST Inc. *See, e.g.*, *Genus*, 2019 WL 7313047, at *4 ("When the requesting party has 'not shown [that it] attempted to obtain documents from the [opposing party] in an action prior to seeking documents from a non-party, a subpoena duces tecum places an undue burden on a non-party. . . . Further, 'when an opposing party and a non-party both possess documents, the documents should be sought from the party to the case.'" (alteration in original) (quoting *Soto*, 282 F.R.D. at 505)); *Davis v. Ramen*, No. 1:06–cv–01216–AWI–SKO PC, 2010 WL 1948560, at *1 (E.D. Cal. May 11, 2010) (denying a request for a subpoena duces tecum because the plaintiff had not demonstrated that the records were only obtainable through the non-party); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005) (because "plaintiffs have not shown they have attempted to obtain these documents from defendant, the Court finds that, at this time, requiring [the] non-party . . . to produce these documents is an undue burden").

**3.    The Subpoena is a transparent attempt to pressure Arrow to produce documents (that should first be sought from ST Inc.) in exchange for canceling a burdensome deposition.**

Purdue's dealings with Arrow and other subpoenaed distributors suggest that the subpoenas are an abusive discovery tactic specifically designed to extort documents from non-parties that should first be sought through party discovery so that Purdue can side-step the party discovery procedures of Fed. R. Civ. P. 34.

As previously mentioned, Purdue served deposition subpoenas on at least three of ST's authorized distributors—Arrow, Mouser, and Digi-Key. During the meet-and-confer on the Arrow Subpoena, Arrow asked Purdue why it chose to issue a deposition subpoena covering topics regarding the details of documents instead of directly seeking the documents themselves. Specifically, Arrow's counsel asked Purdue's counsel to identify what information, if any, Purdue needed to obtain through a deposition that it couldn't get from the underlying documents. Purdue's only explanation for the deposition subpoena was that "this is how we are choosing to obtain evidence in this case" and that the deposition subpoena is necessary because Purdue is seeking "admissible testimony." But Purdue's conduct with other subpoenaed distributors undermines its argument. For at least Mouser's deposition subpoena, Purdue agreed to forego the deposition altogether in exchange for production of the underlying documents. *See* **Ex. E**: Email agreement between Purdue and Mouser, at 1–2.

Purdue's deal with Mouser suggests two things. First, it suggests that what Purdue is really seeking with these distributor subpoenas are the documents themselves, not corporate testimony. If specific testimony from the non-party distributors were important here, Purdue would not have canceled Mouser's deposition. Second, the Mouser deal suggests that these

deposition subpoenas are merely a tactic employed by Purdue to strong-arm non-parties into producing documents that should be sought through party discovery, and bypass the normal procedures for objections and responses under Fed. R. Civ. P. 34. The tactic apparently worked against Mouser, but this Court should put an end to Purdue's use of burdensome non-party deposition subpoenas as a shortcut for party document requests.

**B.     The Court should award Arrow its attorneys' fees associated with opposing the Subpoena and filing this Motion.**

Because Purdue has not taken all reasonable steps to reduce the burden on non-party Arrow as required by Federal Rule of Civil Procedure 45, the Court should impose an appropriate sanction. Under Rule 45, "[a] party or attorney responsible for issuing and serving a subpoena ***must*** take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1) (emphasis added). When a party or its attorney fails to do so, "[t]he court for the district where compliance is required ***must*** enforce this duty and ***impose an appropriate sanction***—which may include lost earnings and reasonable attorney's fees." *Id.* (emphasis added). As explained above, Purdue has taken no steps to reduce the burden or expense to Arrow. Instead, Purdue has unreasonably attempted to use a burdensome deposition subpoena to obtain information that is readily obtainable from a party defendant. Therefore, this Court should require Purdue to pay Arrow's reasonable attorneys' fees associated with opposing the subpoena and filing this Motion.

## CONCLUSION

The Court should quash the deposition subpoena served by Purdue on non-party Arrow in its entirety and order Purdue to pay Arrow's reasonable attorneys' fees associated with opposing

the subpoena and filing this Motion. Arrow requests all such other and further relief to which it

may be justly entitled.

Dated: June 1, 2022

Respectfully submitted:

By: */s/ Justin S. Cohen*
**Justin S. Cohen**
   SBN 24078356
   Justin.Cohen@hklaw.com

**HOLLAND & KNIGHT LLP**
   One Arts Plaza
   1722 Routh St., Suite 1500
   Dallas, Texas 75201
   214.969.1700

**ATTORNEYS FOR**
**NON-PARTY ARROW ELECTRONICS**


## CERTIFICATE OF CONFERENCE

Undersigned counsel certifies that on May 26, 2022, and pursuant to D.C.COLO.LCivR

7.1(a), Justin Cohen, counsel for Arrow Electronics, conferred with Chiji Offer, counsel for The

Trustees of Purdue University, regarding Arrow's concerns and objections to the deposition

subpoena at issue in this Motion, including that the subpoena imposes undue burden on Arrow,

purports to require Arrow's corporate representative to assemble and memorize the contents of

documents and communications, and seeks information from a non-party that should first be

sought from a party to the underlying litigation. No agreement was reached regarding the

subpoena, thereby necessitating this Motion.

   */s/ Justin S. Cohen*
   Justin S. Cohen

## CERTIFICATE OF SERVICE

I certify that on June 1, 2022 the foregoing document was served on the counsel below by

email and by placing a copy in the U.S. mail:

| | |
|---|---|
| Mark D. Siegmund (Texas Bar No. 24117055) | Alfonso G. Chan (Texas Bar No. 24012408) |
| msiegmund@shorechan.com | achan@shorechan.com |
| Of Counsel | Michael W. Shore (Texas Bar No. 18294915) |
| SHORE CHAN LLP | mshore@shorechan.com |
| 1508 North Valley Mills Drive | Halima Shukri Ndai (Texas Bar No. 24105486) |
| Waco, Texas 76710 | SHORE CHAN LLP |
| Telephone: 254-772-6400 | 901 Main Street, Suite 3300 |
| | Dallas, Texas 75202 |
| | Telephone: 214-593-9110 |
| | Fax: 214-593-9111 |


*/s/ Justin S. Cohen*
_____
Justin S. Cohen